UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No: 1:24-CR-81 |
| v. | ) |
| | ) Judge Curtis L. Collier |
| ANTONIO DEWAYNE WATKINS | ) |

**MEMORANDUM**

This matter is before the Court for consideration of the application of *Old Chief v. United States*, 519 U.S. 172 (1997), and *United States v. Walker*, 160 F.3d 1078 (6th Cir. 1998), to the trial of Defendant, Antonio DeWayne Watkins. The United States (the "Government") and Defendant and have submitted briefs (Docs. 101, 103, 105, 108), and the Court held a hearing on August 21, 2025 (Doc. 106). Defendant, who is representing himself,[1] also seeks a new trial under Rule 33 of the Federal Rules of Criminal Procedure. (Doc. 103.)

**I.    BACKGROUND**

Beginning on August 11, 2025, Defendant was tried before a jury on a seven-count superseding indictment. (Docs. 26, 80.) As most pertinent here, Count Four charged Defendant with possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1) on July 3, 2024. (Doc. 26 at 2.) Counts One and Two charged Defendant with possession with intent to distribute fifty grams or more of methamphetamine and an unspecified amount of fentanyl, respectively, and Count Three charged Defendant with possessing a firearm in furtherance of a drug-trafficking crime, all also on July 3, 2024. (*Id.* at 1–2.) Counts Five and Six charged Defendant with

---

[1] Defendant has represented himself in this case since April 8, 2025, with appointed standby counsel available. (Docs. 36, 37.)

distribution of fifty grams or more of methamphetamine on July 17 and July 31, 2024, respectively.[2] (*Id.* at 2–3.) Count Seven charged Defendant with assaulting a person assisting officers and employees of the United States in the performance of official duties, causing bodily injury, on February 4, 2025. (*Id.* at 3–4.)

On August 13, 2025, during the morning of the third day of trial, the Government called Austin Scofield, an Assistant District Attorney for Hamilton County, Tennessee, as a witness. The Government sought to use the witness to admit into evidence certified copies of three felony criminal judgments against Defendant: two for drug-trafficking offenses, and one for voluntary manslaughter.

Defendant objected. He based his argument on the risk of undue prejudice under Rule 403 of the Federal Rules of Evidence, among other grounds, and he offered to state that he was a felon. The Government argued the evidence was relevant to Count Four, possessing a firearm as a felon. The Government represented that it had sent Defendant a proposed stipulation before trial that would have complied with *Old Chief*, but Defendant had not signed it. Defendant acknowledged having received the proposed stipulation but complained of having received it only four days before trial began and not having understood it. Defendant did not offer to sign the Government's proposed stipulation. However, he repeated several times his willingness to say he was a felon.

The Court overruled Defendant's objection based on several factors. First was Defendant's failure to accept the proposed stipulation at any time before the third day of trial, thereby requiring the Government to call a witness, who was then actually on the stand, to offer evidence on the relevant questions. Second was uncertainty of the details of any stipulation to which Defendant

---

[2] Counts One, Five, and Six also contained enhancement allegations under 21 U.S.C. § 851. These allegations were bifurcated from the first phase of Defendant's trial.

would actually agree. And third was some degree of uncertainty about the reliability of Defendant's offer to enter a stipulation. Specifically, during the trial up to that point, the Court had observed multiple instances when Defendant misstated a witness's previous testimony while cross-examining that witness. This caused the Court to have questions about the consistency and reliability of some of Defendant's assertions.

The three criminal judgments were entered into evidence as Government Exhibits 30, 31, and 32 during Mr. Scofield's testimony.

The Court gave the jury two limiting instructions as to the use of the evidence of Defendant's convictions. The first instruction was given after the morning break on August 13, the day of Mr. Scofield's testimony. The second was given during the final charge to the jury on August 14, as follows:

> You have heard evidence that the defendant was convicted, before the crime charged in the Indictment regarding the possession of a firearm by a convicted felon, in a different court, of crimes punishable by imprisonment for a term exceeding one year.
>
> This prior conviction has been brought to your attention only because it tends to establish one of the elements of the crime of possession of a firearm by a convicted felon as set forth in the Indictment, specifically, that the defendant had a prior felony conviction. You may not consider a prior conviction in deciding whether the defendant was in knowing possession of the gun that he is charged in this case with possessing, which is a disputed issue in this case.
>
> The fact that the defendant was found guilty of another crime on another occasion does not mean that he committed any of the crimes charged in the Indictment, and you must not use his guilt of another crime as proof of any crime charged in this case except for the one element of this crime which I have mentioned. You may find the defendant guilty of this crime only if the government has proved beyond a reasonable doubt all of the elements of this crime and that the defendant committed it.

The jury returned a verdict of guilty on all seven counts on August 15, 2025.[3]  (Doc. 93.)

After excusing the jury,[4] the Court gave both sides a copy of the opinion in *Walker* and told the parties the Court believed it might have erred in its ruling on Defendant's objection in light of *Walker*.  The Court set a hearing on the question for August 21, 2025, and instructed the parties to submit any briefs by August 19, 2025.  (Docs. 90, 91.)

Each party filed a brief on August 19.  (Docs. 101, 103.)  The Government's brief argued the Court had not erred and, even if it had, the error was harmless.  (Doc. 101.)  Defendant's brief argued the Court had erred and also requested a new trial under Rule 33 of the Federal Rules of Criminal Procedure.  (Doc. 103.)  On August 21, 2025, the Government filed four attachments to its previous brief.  (Doc. 105.)  The Court held a hearing on August 21, 2025, and took the matter under advisement.  (Doc. 106.)  Defendant filed a reply on August 27, 2025.  (Doc. 108.)

## II. <u>DISCUSSION</u>

The three questions before the Court are (1) whether the Court erred in admitting evidence of Defendant's three prior convictions over Defendant's objection; (2) if so, whether the error was harmless; and (3) in either case, whether Defendant should receive a new trial under Rule 33.

### A. **Whether an Error Occurred**

*Old Chief* requires the Government to accept a defendant's offer to stipulate to the prior-conviction element of a felon-in-possession offense rather than allowing the Government to introduce evidence of the Government's choosing to prove the defendant had a felony conviction

---

[3] The Government later asked the Court to disregard the drug amount for the verdict on Count Six because of a typographical error on the verdict form.  (*See* Doc. 100.)

[4] The Court did not discharge the jury at that time because of the remaining question of possible enhancements under 21 U.S.C. § 851.  The jury was discharged on September 15, 2025.  (Doc. 110.)

4

at the relevant time. 519 U.S. at 172. In *Walker*, the Court of Appeals for the Sixth Circuit applied *Old Chief* where the defense had offered to enter into a stipulation during the trial itself. 160 F.3d at 1086. The *Walker* court held that the trial court had erred under *Old Chief* by rejecting the defense counsel's oral offer during trial to stipulate that the defendant had been convicted of a prior felony. *Id.*

The facts in *Walker* are similar to the facts in this case, in that Defendant said during trial that he would admit to being a felon in order to keep out the Government's evidence of his prior felony convictions. This similarity raises the question of whether the Court erred in allowing the Government to introduce evidence of Defendant's previous convictions over Defendant's objection.

The Government argues no error occurred. It seeks to distinguish *Walker* on the grounds that *Walker* predated *Rehaif v. United States*, 588 U.S. 225 (2019), which added a knowledge-of-status element to firearm possession offenses, *id.* at 237; that in *Walker*, the defendant had not previously rejected a proposed stipulation; and that here, Defendant never offered to stipulate to his knowledge of his felon status. (Doc. 101 at 2–3.) For his part, Defendant merely asserts generally that the Court erred under *Old Chief* and *Walker* in admitting the evidence. (Doc. 103.)

The Government's main argument is that *Walker* does not apply to the new knowledge-of-status element the Supreme Court articulated in *Rehaif* because the Court of Appeals for the Sixth Circuit has repeatedly rejected attempts to expand *Old Chief* beyond the status element of a felon-in-possession charge. (Doc. 101 at 3 (citing *United States v. Carpenter*, 157 F.4th 841, 851 (6th Cir. 2025) (citations omitted) ("The general rule is that the government is 'entitled to prove its case by evidence of its own choice.' An exception arises when a defendant wishes to stipulate that he

5

satisfies the prior conviction element of an offense. This court has consistently declined invitations to expand the government's obligation beyond this exception.")).)

As a preliminary matter, the Government's reliance on *United States v. Smith*, 70 F.4th 348 (6th Cir. 2023), does not resolve the question. The Government argues *Old Chief* should not apply to the knowledge-of-status element added by *Rehaif* because of *Smith*, a post-*Rehaif* case in which the defendant refused to stipulate to his status as a felon before trial and then unsuccessfully appealed based on the alleged undue prejudice from the admission of evidence of his eleven prior convictions. (Doc. 101 at 3.) However, unlike both *Walker* and this case, there was no mid-trial stipulation offer in *Smith*. Therefore, the *Smith* court did not have occasion to address what happens following *Rehaif* when a mid-trial stipulation offer occurs.

The Government is correct that the Court of Appeals "has consistently declined invitations to expand the [G]overnment's obligation" to accept a stipulation beyond one stating that the defendant "satisfies the prior conviction element of an offense." *Carpenter*, 157 F.4th at 851. In *Carpenter*, for example, the Court of Appeals declined to expand *Old Chief* to a stipulation "that [the defendant] knew ISIS was a terrorist organization." *Id.* And in rejecting expansion of the *Old Chief* exception to the nature of images in a child-pornography case, the Court of Appeals also noted unsuccessful attempts to expand the exception to a prior conviction in a prosecution for naturalization fraud, to "serious bodily injury in [a] carjacking prosecution," and to witness bias in a prosecution for a gambling conspiracy. *United States v. Luck*, 852 F.3d 615, 624–25 (6th Cir. 2017) (citations omitted).

But expanding *Old Chief* to a different type of crime is a very different question than expanding *Old Chief* to a new, closely related element of the same crime. That is the situation here, where two closely related elements of being a felon in possession of a firearm—felon status

6

and knowledge of felon status—are at issue. These two elements can often be proven by the same evidence, and the likely evidence for both elements generally carries the same risk of prejudice to the defendant. In addition, "the keystone in *Old Chief*'s holding was the fact that felon status was outside the natural sequence of concrete events that the prosecution has an interest in presenting with robust evidence and a coherent, unbroken narrative." *Id.* at 626. Here, neither a defendant's status as a felon nor the defendant's knowledge of that status are within "the natural sequence of concrete events" the Government needs to present "with robust evidence and a coherent, unbroken narrative." *See id.*

Moreover, the Court of Appeals has given similar treatment to the elements of status and knowledge of status in a felon-in-possession case. In *Smith*, the Court of Appeals analyzed the potential for a stipulation on both elements and the type of proof allowable for both elements in the same way. It stated, "[e]vidence of prior felony convictions has a significant tendency to prove both facts," namely felon status and the defendant's knowledge of that status, and also noted that there was no evidentiary alternative to proving either of those facts "absent a stipulation." *Smith*, 70 F.4th at 352. The Court of Appeals did acknowledge that slightly different, and more, proof may be necessary to prove knowledge than to prove mere status, but it treated the potential for a stipulation on both elements in the same manner throughout the opinion. In fact, it seems to have assumed that a single stipulation would cover both elements. *See, e.g., id.* at 354 ("after declining ***a stipulation*** that would preempt concerns of unfair prejudice, defendants face an uphill climb to demonstrate on appeal why their decision should unduly hinder the government's prosecution") (emphasis added).

It is thus highly likely the Court of Appeals would treat a stipulation on the knowledge element added by *Rehaif* in the same way as a stipulation on the status element under *Old Chief*.

7

The two elements are closely tied conceptually, proving them both carries the same risk that led the Supreme Court to decide *Old Chief* as it did in the first place, and both elements are "wholly independent[] of the concrete events of later criminal behavior charged against" the defendant. *See Luck*, 852 F.3d at 624 (quoting *Old Chief*, 519 U.S. at 190).

The Government's second basis on which to distinguish *Walker* is that in *Walker*, the defendant had not rejected a stipulation before the trial began. The Government does not explain in what way a previous rejection would have changed the simple and straightforward reasoning of *Walker*: "Clearly, under *Old Chief*, the court's decision to admit [the witness's] testimony rather than accept [the defendant's] stipulation was error." 160 F.3d at 1086. The Court concludes Defendant's failure to accept the Government's pretrial offer of a stipulation is not determinative.

The Government's third basis on which to distinguish *Walker* is that Defendant here said only that he was a felon, and never offered to stipulate to his knowledge of that felony status at the time of the offense. The Government similarly argued during the hearing that, given Defendant's obstreperousness during the trial, it is not clear to what he would have ultimately agreed, if anything. However, the Court of Appeals has held that the insufficiency of an offered stipulation does not automatically allow its rejection: "We acknowledge that the stipulation offered by Defendant was insufficient without more. An instruction would have been necessary . . . . However, this does not preclude the application of *Old Chief* . . . ." *United States v. Daniel*, 134 F.3d 1259, 1262 (6th Cir. 1998).

In addition, even if Defendant was in fact only willing to stipulate to his status and not his knowledge, the Government itself points out that "[a] jury may 'infer knowledge of prohibited status . . . from [a defendant's] stipulation that he had a prior felony conviction,' especially if the prior conviction was for possessing a firearm as a felon." (Doc. 101 at 3 (2nd alteration in original)

(quoting *United States v. Conley*, 802 F. App'x 919, 924 (6th Cir. 2020)).) The fact that a prior conviction is some evidence of knowledge cuts against the Government's position that it would have had no evidentiary alternative to prove knowledge if Defendant had been willing to stipulate only to his status.

Ultimately, despite Defendant's failure to make an explicit offer to stipulate to his knowledge of his status, and despite the Court's statement during the trial that Defendant might not follow through on agreeing to the necessary stipulation, the Court now concludes Defendant was likely to have done so once he understood that a stipulation was the only way to keep evidence of his convictions out of the trial. For example, later in the trial, Defendant chose to say in front of the jury that he was willing to plead guilty to a lesser-included offense of Count Seven rather than let evidence of his assault on a corrections officer be admitted unopposed. This incident demonstrates Defendant's ability to grasp the seriousness of certain types of evidence and his willingness to take steps to avoid their introduction.

The Court concludes that admitting the evidence was an error under *Walker* and *Old Chief*.

B.   **Whether the Error Was Harmless**

The next question is whether the error was harmless or the Court should declare a mistrial. *See Walker*, 160 F.3d at 1086 (harmless-error analysis applies to admission of testimony as to convictions instead of an offered stipulation). "When the other evidence of guilt, apart from the evidence admitted in violation of Rule 403, is overwhelming, the Rule 403 error is rendered harmless." *Id.* (citing *United States v. Thomas*, 49 F.3d 253, 259 (6th Cir. 1995)).

Instead of engaging directly with the other evidence of his guilt, Defendant focuses on the prejudice from admitting evidence of one particular conviction, which was for voluntary manslaughter. Defendant makes two critical mischaracterizations in this argument. First, he

9

argues the "details" of the conviction were prejudicial, when in fact only the name of any of the three offenses were introduced, not any of the underlying facts. Second, he characterizes the conviction as being for murder, when the actual evidence admitted was of a conviction for voluntary manslaughter. Evidence of a murder conviction could carry a higher risk of prejudice than a conviction for voluntary manslaughter, but that evidence is simply not present here. All the jury heard or saw was that Defendant had a previous conviction for voluntary manslaughter. Defendant's argument on this question is therefore not persuasive.

The Court turns next to the evidence of Defendant's guilt on the seven charges in the superseding indictment, apart from the Government's evidence on Defendant's three prior convictions.

Counts One through Four charged Defendant with possessing fifty grams or more of methamphetamine and an unspecified amount of fentanyl with intent to distribute them, possessing a firearm in furtherance of a drug-trafficking crime, and possessing a firearm as a felon on July 3, 2024. (Doc. 26 at 1–2.) The Government offered detailed testimony of two law-enforcement officers regarding the events of that day, extensively supported by recordings from two different dash cameras and two different body cameras. The videos showed the drugs and firearm in the passenger seat of the vehicle where Defendant had been sitting, and showed Defendant walking away from the officer who was trying to detain him and surreptitiously dropping what the officers testified were the keys to that same vehicle. The videos also showed a large wad of cash in Defendant's pocket. The Government introduced the firearm at issue in Counts Three and Four and the drugs at issue in Counts One and Two. A special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") testified that the firearm in question met the definition of a firearm and was manufactured in another country. A forensic chemist with the Drug

10

Enforcement Administration (the "DEA") testified to the nature and quantity of the methamphetamine and fentanyl charged in Counts One and Two. A special agent with the DEA testified that the quantities of both drugs were far in excess of what would typically be possessed for personal use, and that the large quantities of the drugs and other factors present in Defendant's case were more consistent with distribution than use. Defendant presented no countervailing evidence for the Court to weigh against the Government's evidence; Defendant cross examined the witnesses against him, but did not solicit any meaningful countervailing evidence or reason to doubt the credibility of the Government's witnesses. The Court finds the evidence of Defendant's guilt on Counts One through Four to have been overwhelming.

Counts Five and Six charged Defendant with distribution of fifty grams or more of methamphetamine on July 17 and July 31, 2024, respectively. (*Id.* at 2–3.) The Government offered the detailed testimony of a different law-enforcement officer, DEA Task Force Officer Justin Headen, who testified to overseeing a controlled buy from Defendant through a confidential informant on each day. Officer Headen's testimony was supported by recordings of phone calls between the confidential informant and Defendant before both of the controlled buys. As to the July 17 controlled buy, the Government also offered a recording of the controlled buy itself. The Government introduced the illegal drugs at issue in Counts Five and Six and presented the testimony of a second DEA forensic chemist as to the nature and quantity of the methamphetamine at issue in the July 17 and July 31 transactions. As with Counts One through Four, Defendant presented no evidence of his own and his cross examinations did not solicit any meaningful countervailing evidence or reason to doubt the credibility of the Government's witnesses. The Court finds the evidence of Defendant's guilt on Counts Five and Six to have been overwhelming.

11

Count Seven charged Defendant with assaulting a person assisting officers and employees of the United States in the performance of official duties, causing bodily injury. (*Id.* at 3–4.) The Government introduced testimony by a Hamilton County Sheriff's Deputy that Defendant punched him in the face on February 4, 2025, while the deputy was working at the detention facility in which Defendant was housed. The deputy testified to suffering injuries including a bruise on his face, swelling, a sore jaw, and its having been painful to eat as a result. The Government introduced a video recording showing Defendant punching the deputy in the face. Finally, the Government offered the testimony of a Deputy U.S. Marshal explaining that on February 4, 2025, the deputies at Defendant's detention facility were assisting the Marshals Service in performing the official duty of keeping custody of Defendant as he awaited federal trial. As with Counts One through Six, Defendant presented no evidence of his own and his cross examinations did not solicit any meaningful countervailing evidence or reason to doubt the credibility of the Government's witnesses. The Court finds the evidence of Defendant's guilt on Count Seven to have been overwhelming.

Thus, despite Defendant's assertions to the contrary, the Government's proof of Defendant's guilt on each of the seven counts of the superseding indictment was overwhelming.

In addition, some of the testimony Defendant himself elicited through cross examination added to the weight of the evidence against him. Defendant himself elicited testimony from Officer Headen that Officer Headen initiated his July 2024 investigation of Defendant because he knew Defendant to be a drug trafficker; that Officer Headen knew Defendant to be a validated gang member; that Officer Headen knew Defendant to be an associate of individuals currently serving lengthy periods of incarceration for drug trafficking; and that drug trafficking is a crime that hurts the community. This testimony both added to the weight of evidence against Defendant

and reduced or canceled out the danger of unfair prejudice to Defendant from the Government's evidence on Defendant's two previous drug-trafficking convictions.

The Court concludes that the error in admitting testimony regarding Defendant's three prior convictions and in admitting Exhibits 30, 31, and 32 was harmless. Declaring a mistrial is therefore not appropriate.

### C. Whether Defendant Should Receive a New Trial

A court may vacate a judgment and grant a defendant a new trial on the defendant's motion "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision to order a new trial is committed to a court's sound discretion, which is subject to review for abuse. *United States v. Talley*, 164 F.3d 989, 1002 (6th Cir. 1999); *United States v. Davis,* 15 F.3d 526, 531 (6th Cir. 1994). In deciding whether a new trial is warranted, a court should primarily concern itself with whether the prior proceedings were fair for the accused. *Talley*, 164 F.3d at 1002. Motions for new trials are not favored and should only be granted with great caution and in extraordinary circumstances. *United States v. Garner*, 529 F.2d 962, 969 (6th Cir. 1976); *United States v. Hoffa*, 382 F.2d 856, 862 (6th Cir. 1967). A defendant bears the burden of proving a new trial should be granted. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991).

Under Rule 33, a judge may permit a new trial if a verdict is against the "manifest weight" of the evidence. *United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018) (citing *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007)). A Rule 33 motion requires "the trial judge to take on the role of a thirteenth juror, weighing evidence and making credibility determinations firsthand to ensure there is not a miscarriage of justice." *Id.* (citing *Hughes,* 505 F.3d at 593). Rule 33 does not require the court to view the evidence in a light most favorable to the prosecution. *Id.*

For the reasons explained in the preceding section, and in its role as a thirteenth juror, the Court concludes that the verdict in this case was not against the manifest weight of the evidence. *See supra* § II(B).

Nor were the proceedings unfair to Defendant. *See Talley*, 164 F.3d at 1002 (court should primarily consider whether proceedings were fair in deciding a Rule 33(a) motion). Defendant knowingly waived his right to counsel and instead exercised his right to represent himself. Defendant did so despite multiple warnings from the Court of the risks of self-representation, both before and during the trial. Despite Defendant's election to represent himself, the Court appointed standby counsel to assist Defendant in his defense. And while representing himself, Defendant was able to participate in every phase of the trial. He was given the opportunity to present an opening statement both at the start of trial and again at the close of the Government's case, provided he would confine himself to stating what the evidence would show. He availed himself of the opportunity to make evidentiary objections, cross examine witnesses, move for a directed verdict, participate in the charge conference, and make a closing argument. Defendant had the opportunity to present his own evidence, but elected not to do so, as was his right.

In all, the Court concludes the proceedings were fair to Defendant, the verdict was not against the weight of the evidence, and the interests of justice do not require a new trial for Defendant.

### III. CONCLUSION

While the Court erred in allowing the Government to introduce evidence of Defendant's three prior convictions during the trial, the error was harmless. Neither a mistrial nor a new trial under Rule 33 are appropriate in this case.

**AN APPROPRIATE ORDER WILL ENTER.**

                                      **/s/**
                                      **CURTIS L. COLLIER**
                                      **UNITED STATES DISTRICT JUDGE**